Good morning, if it still is. And again, I apologize, I took the advantage to step out and use the ladies room and didn't realize the other case wouldn't be called. May I please the court, my name is Lisa Freeland and I'm here today on behalf of Vernon Williams. The clearly established federal rule that's at the heart of this case is the Bruton Rule. And that rule, as applied and refined in Gray and Richardson, prohibits the admission of a non-testifying co-defendant's confession where the statement immediately, directly, and obviously refers to the defendant. Because when the redacted statement here was uttered, it did just that, the state court unreasonably applied clearly established federal law in finding that Mr. Williams' Confrontation Clause rights were not violated. Were the redactions here obvious, and if so, how? I'm sorry, Your Honor, I feel like I'm getting some feedback here. Were the redactions here obvious, and if so, how? Well, Your Honor, they were obvious because of the Commonwealth's opening and because of the evidence that preceded it. And the fact that it was from the very beginning, the prosecutor in his opening explained to the jury, this is a two defending case, it's Curtis Mahaffey, it's Vernon Williams, the driver, the shooter, and in fact made reference to the confession and my boy. Well, in the first instance, what I'm asking is, is it obvious that there were redactions? Oh, I'm sorry. And then in the second instance, were the alterations were made obvious in terms of pointing toward Mr. Williams? You see, I'm sure, more of these cases than I do, but I've seen a lot of these cases over the years and I'm trying to remember one, if I have seen one, where there wasn't a written statement that was redacted. Where what you have is a detective on the stand simply giving a narrative of what was said to him in a statement and himself inserting my boy instead of reading from a redacted written statement. And that is a distinction in this case. But to get back to your initial question, I think that there is an argument that the redaction itself, that the statement had been redacted, the alteration was obvious, and I'm going to put that to the side for just a second because I don't think that that's necessary, but I think that there is a point to be made there. But the gray court's holding is really two-part. One was the redaction that was made was so obvious to the jury, it said delete, delete, blank space. Who would not know that that statement had been altered? But in order to find a Bruton violation, the court had to make the further finding that the obvious alteration obviously and directly referred to the defendant. That's the Bruton violation. That's the second part. So I think here we may or may not have an obvious alteration. My reason for what we do have, a direct and obvious and immediate reference to the defendant. I mean, the jury could not infer based at the time that statement was uttered. The jury could not infer to anything else other than that this reference is very obvious. Well, he's the last witness, isn't he? The very last witness of the redacted. But just as an aside, in terms of the obviousness of the alteration, the placement of Detective Logan's testimony is also significant, because at that time when the jury heard my boy, my boy, my boy, my boy, they're probably saying to themselves, just as the court in gray surmised, well, what's he talking about, my boy? We all know this is Vernon Williams because we've heard the exact testimony. We've heard from the prosecutor in the opening argument that they're talking about Vernon Williams. Why would he be saying my boy, my boy, my boy? Certainly Mr. Mahaffey knows the name of Vernon Williams. And so I think that arguably we have a situation where the redaction itself, the alteration itself, was obvious. But you're allowed to do linking. They're allowed to link evidence, right? In this case, yes. I mean, I think one of the arguments that the Commonwealth has raised is that post-Richardson in gray, linkage is out. But gray made very clear that... What do you mean by that? Can you just say it to me? When you say linkage is out, what do you mean? Well, in Richardson, it means that if you have to use, if the jury has to refer to anything outside of the statement itself to connect it to the defendant, that that's fatal to your Bruton claim. But that's not what the cases say. Richardson found that reference to evidence produced later at trial in a case where the statement did not directly... Produced by the defense later at trial. Produced by the defense, absolutely. In a case where the redaction eliminated all reference to the defendant did not violate Bruton. And there was language in Richardson that said, I mean, it said if you have to infer, but the key was to evidence produced later at trial. And there were policy reasons for that explanation that there's no Bruton violation. But gray came along and explained Richardson and clarified it and said it referenced... Justice Breyer explained Justice Scalia's opinion in Richardson versus Marsh, but Justice Scalia dissented in gray, not seeming to accept the explanation of his opinion. No, I don't think that he did accept it. But it was a loving clarification. Just between questions. The court in gray did clarify that Richardson didn't mean inference, any inference. If it's the type of inference that's so clear, that if it's the type of inference that a jury could make automatically, then inference alone, a linkage to other evidence is not fatal to a Bruton claim here. And I think that the key in this case is that, number one, what the Bruton rule is. The Bruton rule, as I said, is the statement can't immediately, obviously, and directly refer to the defendant. And on the facts of this case, the statement, when it was admitted, when it was uttered, did just that. All right. We really have only three Supreme Court precedents that deal with redaction in this kind of confrontation setting. And you've talked about all three of them. What we've got to decide is whether the Superior Court, back in 2005, was it? Yeah, August of 2005, made an unreasonable application of this Supreme Court jurisprudence. And none of the three cases really have the kind of alteration, redaction, whatever you want to call it, that we have here. And that's safe to say. Certainly, that's not what Bruton was about. And it's also not what Richardson v. Marsh was about. Scalia leaves open in a footnote that we're not reaching a situation where a neutral pronoun or something, or some symbol has been used. Yes. And then we have gray. Yes. And I think… So how is it an unreasonable application? Well, there's a couple of steps. And the first one, and I think that the application of the Bruton rule in factual circumstances different from those in Bruton, establishes clearly that the Supreme Court intended for this rule to be applied given different sets of facts and where there were factual permutations. It wasn't limited to statements that involved the defendant's name. It's not limited to those like the statement in Richardson. And it's not limited to that like the statement in gray. It is a fundamental principle. And the Supreme Court has said that these fundamental principles must be applied by the state courts to different factual permutations or different sets of facts when it's clear that it should be. This case involving a neutral pronoun is as clear as this set of cases applies here. Well, it's not a neutral pronoun. It's a descriptor. It's not. Thank you, Your Honor. It's not neutral and it's not a pronoun. But it's been termed the neutral pronoun by the Superior Court and I use its language. But the Superior Court here recognized that this line of cases applied. It just unreasonably applied them by failing to recognize. I mean, one thing that was clearly unreasonable was failing to recognize that when you have a redacted statement that eliminates the defendant's name but not all reference of his existence, you can't just stop there and say, well, the jury had to infer. The jury had to refer to other evidence, so Bruton is not violated so long as there's a limiting instruction. It ignored the nuances that were added to the Bruton rule in Gray and Richardson, as Judge Schwartz pointed out, that you are allowed to infer. You are allowed to refer to evidence in some circumstances. And the Superior Court's rule failed. It treated all neutral pronoun or non-neutral pronoun redactions the same instead of looking at them to distinguish those which are immediately, directly, and obviously referring to the defendant from those which don't. And there are going to be situations where neutral pronouns are used, and the court in Gray gave an example of one where it's not going to violate the Confrontation Clause because when it would have been offered, it would not have immediately, obviously, and directly identified the defendant as the person. So really, this court in its prior cases has called the Pennsylvania approach a blanket rule, a bright-line rule. I don't know if either one of those terms is something that I would ascribe to it, but it had a very limited approach. It took the approach that I don't have to look beyond the fact that the name was removed, a neutral phrase was inserted, and a limiting instruction was given. And that was just the fact that there were only two on trial, only two involved in the act at issue. And most importantly, the fact, as Judge Smith pointed out, when this statement was offered, it had already been discussed in the opening and throughout the trial testimony. At that point, there could have been... The Superior Court didn't evaluate the redaction in context. Does it really matter, though? What if the government of the Commonwealth started with that statement first? You would still be arguing it was in front of the jury. So for a sequence, it doesn't seem like that's really dispositive. You're right, Your Honor. I mean, in this case, it's the nail in the coffin. But you're correct. If it had been the first piece of evidence offered, I still think that we would be here saying it directly referred to the defendant, in part because of the context of the trial, but also because of the opening argument of the prosecutor. How important is it to your position that this was simply a two-defendant joint trial? Well, it's almost hard to answer that question in context. This Court has... Yes, we have suggested that the number of defendants is a factor. It's a relevant consideration, and I think it is here. I think that the number of defendants is one among several factors that led to the fact that this was so obvious and so immediately incriminatory of Mr. Williams. I wouldn't say that the number alone is the singular factor, but it certainly contributed. All right, thank you. We'll have you back on the bottle, Ms. Freeland. Ms. Tomasik? Tomasik, Your Honors. Yes, may it please the Court, Kelly Tomasik on behalf of the government. Good morning, Your Honors. I think what's important here to remember is the standard, which was just recently reinforced by the recently established Woodall case, is that in order to be granted relief, Mr. Williams must establish that the state court unreasonably applied clearly established federal law as decided by the United States Supreme Court. How does Woodall change the equation, if at all, in terms of what we do with this case, with this Bruton-type case, with this confrontation? I think Woodall was very, very important in one main regard, in that it reiterated the standard in which this Court must follow when evaluating habeas claims under Section 2254, and that is this Court must look, while we are not conceding that you must exactly ignore Third Circuit precedent, but we are stating that in light of Woodall and what Woodall held, they clearly stated that under this standard you must only determine whether Mr. Williams' confrontation clause rights were violated and was that an unreasonable application based on clearly established law as decided by the United States Supreme Court. I think that's very important to remember in these types of Bruton cases, is that it's not its own Circuit precedent that would be controlling, it would be a United States Supreme Court precedent. You just said something interesting there, that it's not just this Court's precedent, because perhaps I was reading it incorrectly, but I was left with the impression, after looking at your supplemental brief file quite recently, that you were actually asking us to ignore our Circuit precedent. Right, ignore it to the extent that it can only be advisory. You cannot look at your prior Third Circuit cases. Is that a radical rewriting of the doctrine of stare decisis? I don't believe so, Your Honor. I didn't think you would think so. I don't believe so, Your Honor. And that's not what the government is saying. The government is expressly stating that when we're looking at cases like the one here, you must follow Supreme Court precedent, and that is only, in this case, Bruton, Richardson, and Gray. But our precedent is written against the backdrop of AEDPA and what 2254 says. And so unless it's in conflict with Supreme Court precedent, it controls. It is precedent. It is stare decisis for purposes of our decision-making, isn't it? And we understand that to the extent that you have held certain things in the past and prior cases, we acknowledge that. We acknowledge that there has been a contrary position in certain cases concerning neutral pronouns. Aren't you also running up against our own IOPs, which say that if we have a precedent, we can't overrule it by a panel decision. We need to do so in bonk. How could we possibly elect to ignore a precedent of our court unless our court has in bonk said so? Well, as stated in Woodall, Woodall was very clear in that when you are looking at a habeas claim under AEDPA, you must follow Supreme Court precedent. Woodall was very clear in that. Isn't that the question before us then, whether Woodall undermines the existing precedent? Because if we were to follow precedent such as Washington, which we are bound to follow in the habeas context here, we would have to determine that there was indeed an unreasonable application of existing Supreme Court precedent. Well, and that's why Washington, I believe, was reversed. Woodall stated in Washington, in light of Woodall, Washington is now reversed and remained it for further consideration. And we interpret that to also mean that when you go back and look at the Washington case, instead of applying its own controlling precedent, you must still look at United States Supreme Court precedent when determining whether this defendant's Constitutional Confrontation Clause rights were violated. Do you agree, especially given Judge Minaski's inquiry here, that while we're hearing oral argument today, that before we decide the instant matter, we should await the panel's decision in Washington upon remand? It's your question to me whether we should hold upon a decision. Whether this panel, before it decides this case in Williams, awaits a decision by the panel on remand in Washington? I mean, I don't think it's necessary that this court awaits a decision in Washington. I believe it would be more instructive, perhaps, for this case in certain regards, in that in Washington, the appeal of the circuit determined that the state court applied this bright line or blanket approach to a defendant's Confrontation Clause claim when it involved neutral pronouns. To that extent, perhaps it might be instructive in this particular instance. But I believe the result would be the same under Washington as it would be here in regards that neutral pronouns, the issue of neutral pronouns and their admissibility has never been squarely established by the United States Supreme Court. Opposing counsel would like to believe that it has been, but that's incorrect. Based on a proper reading of Bruton, Richardson, and Gray, the Supreme Court has not squarely established the use or imprimisive use of those types of redactions. Well, we all have to agree with that. But why can we not extend existing Supreme Court precedent out there if it's a reasonable way of applying the basic principles of Bruton, Richardson, and Gray? Well, and I think... That's the ultimate question, isn't it? There's a reasonable extension of those cases. Correct. We can't wait for a case on all fours. I mean, to the extent you could find factual distinctions, we could wait throughout eternity for that. And that's not practical, and that's not what we're required to do, is it? Well, and pursuant with all your honors, it did address the... Is this a single principle, and there's just different factual permutations that have arised? Or are we looking at two different principles? And in this case, we're looking at two different principles. On the one hand, the principle that has been established is that when you're looking at a redacted confession, if it directly or facially implicates a defendant, either by explicitly naming that defendant or by an obvious sign of alteration in the confession, that violates Bruton. We agree. However, the second principle that has not been established by the Supreme Court is whether in a non-testifying co-defendant's redacted statement neutral pronouns are appropriate. The Supreme Court has not established and come out and stated or extended its principle it held in Gray to include neutral pronouns and phrases. In this case, the term was his boy. There's been no explanation or extension by the United States Supreme Court, nor should this court further extend the principle in Gray to include neutral pronouns if it does not, in our case, obviously and directly implicate Mr. Williams. What is it that does not obviously and directly implicate Mr. Williams when they substitute his name with his boy? I think if you look at the confession as a whole, when Detective Logan, who introduces confession into trial, when Detective Logan replaced the name Mr. Williams with his boy, that was a very accurate, non-obvious way to redact and the least specific way to redact a statement in this particular matter. His boy could have referred to anyone else, and as Gray instructed, it's the sort of obvious... His boy referred to both the person who was involved in the theft of the vehicle and the shooter, right? I'm sorry, what was the question? His boy was directly linked to the person who participated in the theft of the truck and in the shooting. Well, of course, Mr. Williams, his boy, was in reference to the defendant, Mr. Williams, but that was not an immediate, obvious signal to the jury that this redaction or alteration of confession had occurred. And that's really the point of Gray's, that in Gray, the United States Supreme Court stated that it is those types of obvious redactions, obvious alterations of a confession that immediately signal to the jury that the confession had been redacted. You don't think that it's obvious when, as here, as opposed to the other cases I've had experience with, in narrative testimony, I believe a dozen times, the detective says, my boy, as a quotation, rather than using a name of someone who Mahaffey had witnessed shoot someone or heard shoot someone since he wasn't actually a witness who chose to testify or did testify that he saw this. You don't think that's obvious? Is that common parlance? Is that the way people talk? Describing this whole series of events and 12 times saying, my boy, not referring to somebody by name. Yes, Your Honor. And that was one of the government's positions in this particular case is that when you read the confession, using the term... Well, we can't read a confession. What we can do is read testimony of a defendant, rather of a detective who is giving a narrative description of what was said to him. Right. I stand corrected, Your Honor. When we look at that testimony by Detective Logan, when he replaced Mr. Williams' name with his boy, it was not an obvious indication. People do talk like that. I think that you can look at that confession and say, yes, this was not... The boy could be anyone. Maybe he didn't implicate the co-defendant in that particular case. I don't think that you can read the confession in this particular case and say that the jury immediately knew his boy is Mr. Williams, that has to be Mr. Williams. If that was the first piece of evidence admitted at trial in this case, we do not believe that the jury would have heard that confession and said his boy has to be Mr. Williams, even though, as opposing counsel would argue, that it was a two-person jury trial. Don't you think that jury, if this had been the first witness testifying, would be sitting there thinking, wow, I would really like to know who that unnamed person is who's obviously the shooter. Don't you think that jury very well may have thought, this is a two-defendant trial. Mahaffey has given a statement saying he's the one guy. The other hasn't been named in this series of events. Don't you think even if the first witness, to be Detective Logan had been the first witness, that the jury would still be wondering about that? Juries are curious and they're engaged and they want to know. And we can't lose sight of the fact that this is a statement that is being offered and can be offered only as against Mahaffey. That's the only purpose for its admission. I agree, Your Honor. However, we can state, sure, a jury will always, whether it's a two-person trial, a 15-person trial, the jury will always to a certain degree infer that the unnamed defendants are the people sitting at counsel table. They've been charged with a crime for a reason. But we are to presume that the jury will follow the court's instruction when told you must only apply this confession against the person who made the confession. Of course, the jury's not going to care if it's a one-defendant trial. Mahaffey. Right, but the United States Supreme Court I know, I know, and we and everybody, we don't presume that we're going to settle cases. I know that the economics of it favor joint trials. But also, Your Honor, the United States Supreme Court has not squarely established that in two-person trials such as what occurred here, that bringing in an unredacted confession would immediately implicate, would immediately be a sign of alteration of that confession because there's only two-person trials. Of course, silence doesn't require that we park our common sense somewhere and a two-defendant trial doesn't leave a lot of possibilities if there's some suggestiveness to that statement. Right, but at the same token, Your Honor, we do reiterate the idea that the jury is presumed to follow its instructions, including opposing counsel mentioned opening and closing arguments. The jury was instructed that counsel's arguments in the opening statement and closing statement is just that, it's an argument. It's not to be considered evidence. So let's focus on the evidence. Let's assume that we were to reach this issue, find there was error in the use of the statement. Right. You have an obligation then to demonstrate to us that to save the conviction, you need  was appropriate. Talk to me a little bit about the evidence. Right, Your Honor. If, which we are not saying there was, if this court concedes that there was an error that occurred, then the next inquiry, it doesn't stop there, the next inquiry for this panel is to determine whether that error had a substantial and injurious effect or influence in determining the jury's verdict. And we would state here, just like in U.S. versus Richards and just like Bond, I believe, versus Beard, that there was other evidence that led to the jury convicting Mr. Williams in this particular case. We just don't have Ms. Bledsoe. We don't just have the confession. We have an eyewitness who said, yes, I saw Mr. Williams shoot this victim. We also have another witness, I believe Mr. Fitzgerald, who stated, or while he continued the trial, his statement was involuntarily made, the Tate confession. I believe my time has stopped. May I continue, Your Honor? Thank you. We also have Fitzgerald's statement come in saying, I overheard, or I was told by Mr. Williams that he shot the victim. You also have another witness, Mr. Ketter, who overheard Mr. Williams say, I shot the victim. In these particular cases, just like in U.S. v. Richards and in Bond versus Beard, there was an eyewitness who testified at trial, and there was other overwhelming evidence that in this particular manner would have led to the jury's conviction even absent that confession. Thank you, Your Honor. Thank you very much. No problem. Ms. Friedland, rebuttal. In my haste, I forgot to ask for my three minutes for rebuttals. We'll give it to you. A couple of points I want to hit on if I can. This case does not require extension of federal rule. The rule from Bruton is a statement of a non-testifying co-defendant if it directly and obviously incriminates the defendant without cross-examination is a violation. In Woodall, the Supreme Court stated very clearly, we are not asking courts to wait for identical factual situations to come along. And the court in Woodall distinguished an extension of Supreme Court law from the application of a fundamental rule like the one set forth in Bruton to a different set of facts. And as I said before, the fact that the Supreme Court itself has applied the Bruton rule to situations where it didn't involve a statement that directly named  for this fundamental rule to be applied in other circumstances. So I take issue with Ms. Tomasic's suggestion that this court or the state court needs to wait for an identical set of factual circumstances to apply the rule. Is the question here whether the issue is beyond any possibility for fair-minded disagreement? Absolutely, Your Honor. Absolutely. That's the test reply. This case. And the thing is, is that the state court realized that this line of cases did apply. It just didn't apply it in a reasonable way. But absolutely, I don't think fair-minded jurists, as I've said in my briefs and in my supplemental briefing, fair-minded jurists could not disagree about whether this statement violated Vernon Williams' confrontation rights. The other point that I wanted to make quickly is that in the opening argument, Ms. Tomasic said opening argument isn't evidence. And I agree. It's not evidence. But it's still relevant to whether or not the statement when offered was obvious. And this is what the prosecutor said in his opening argument. We're here today because two men, Curtis Mahaffey and Vernon Williams, conspired with one another to track down, shoot, and kill the victim in this case. He spoke of the gray pickup truck occupied by none other than Vernon Williams, the trigger man, Curtis Mahaffey, the getaway driver. The prosecutor then went into recounting more of the details, including the use of my boy in his opening statement. It's not evidence, but it is relevant and critical in this case to the court's consideration of whether when that piece of evidence, when that confession came in, whether or not it was obvious. And the state court here acted unreasonably, because it failed to- Your argument is simply that the opening statement highlighted the obviousness of it? I mean, is that the point you're making? No, no, no, not that it highlighted the obviousness, but it is a factual circumstance that occurred before the admission and the testimony. No, no, you yourself have said an opening statement isn't a fact, and it isn't. No, it's not evidence. It can only become a fact if it constitutes some kind of admission. Opening statements can include statements made that can become admissions. But I'm not understanding- My point is that it's not evidence, but just like the fact that there are two defendants in this case, the fact, it's a contextual fact. There are two defendants. There's a contextual fact. The prosecutor gave an opening, which  the jury, when it heard this evidence, found it obvious. So I return to my use of the word focus. So he was asking the jury to focus on these two defendants, these co-defendants at the outset. And specifically using the words of the redacted confession to do that. In the context. And using it in a way, both in his opening and in closing argument, that made it plain that my boy was, in fact, Vernon Williams. So if there's any question about whether the statement itself could have been the opening argument made it plain that my boy was, in fact, Vernon Williams. Thank you very much, Ms. Freeland. Thank you, Ms. Tomasik. Both of you for a very well-argued case, which we will take under advisement. And we'll ask the clerk to recess these proceedings. Please rise. This court stands adjourned until Wednesday, May 14, at 930.